UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
Berkley Insurance Company,

                          Plaintiff,                          **MEMORANDUM & ORDER**
                                                              22-CV-02109 (DG) (TAM)

             -against-

FG-PH Corp., *et al.*,

                          Defendants.
-----------------------------------------------------------------X
DIANE GUJARATI, United States District Judge:

On April 12, 2022, Plaintiff Berkley Insurance Company commenced this action against

Defendants FG-PH Corp. ("FG-PH"), Arista Mechanical HVAC, Inc., CEGF&G Plumbing

Corp., 1815 Linden, LLC, Efstratios Georgelis, Michael Panagiotopoulos, Polyxeni

Panagiotopoulos, Carlos Cassius, and Carmen Cassius (collectively, "Defendants"), invoking the

Court's diversity jurisdiction. *See generally* Complaint ("Compl."), ECF No. 1.[1]  The Complaint

brings one Cause of Action, for contractual indemnification.

In summary, the Complaint alleges that in order to perform work pursuant to construction

contracts for owners of real property, Defendant FG-PH was required to procure performance

and payment bonds; that Defendant FG-PH sought the issuance of the bonds by Plaintiff; that

Plaintiff required that Defendants execute an indemnification agreement as a condition for the

issuance of the bonds; that Defendants executed such agreement; that in reliance upon the

indemnification obligations agreed to by Defendants under the indemnification agreement,

Plaintiff issued a performance and payment bond with respect to a particular construction

project, naming Defendant FG-PH as contractor, Casa Pasiva Housing Development Fund

---

[1]  Familiarity with the procedural history and background of this action is assumed herein.

Corporation & Casa Pasiva LLC ("Casa Pasiva") as owner, and Plaintiff as surety; that due to Defendant FG-PH's failure to perform and/or complete work on the project at issue, Casa Pasiva issued a notice of termination, terminating Defendant FG-PH as contractor, thereby creating an indemnified claim under the indemnification agreement; that consistent with its right under the indemnification agreement, Plaintiff paid Casa Pasiva $10,500,000; and that Defendants are liable to Plaintiff for payment that Plaintiff made under the bond. *See generally* Compl. In short, through this action, Plaintiff seeks to enforce a contractual right to reimbursement of a settlement sum paid.[2]

Pending before the Court is Plaintiff's Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure (the "Motion"). *See* Plaintiff's Notice of Motion for Summary Judgment, ECF No. 53; Memorandum of Law in Support of Plaintiff's Rule 56 Summary Judgment Motion ("Pl.'s Br."), ECF No. 53-3; Plaintiff's Local Civil Rule 56.1 Statements of Material Facts ("Pl.'s 56.1"), ECF No. 53-1; Plaintiff's Reply in Support of Motion for Summary Judgment ("Pl.'s Reply"), ECF No. 58. Defendants oppose the Motion. *See* Affidavit in Opposition ("Defs.' Opp."), ECF No. 54; Defendants' Local Civil Rule 56.1 Counter-Statements of Material Facts ("Defs.' Counter 56.1"), ECF No. 53-2.[3]

---

[2]  Although the Complaint alleges that Plaintiff also settled claims totaling $1,500,000 asserted by unpaid contractors and/or suppliers against the bond, *see* Compl. ¶ 28, it appears that Plaintiff is only seeking reimbursement with respect to the $10,500,000 payment, as set forth below.

[3]  Consistent with the May 23, 2024 Order issued by Magistrate Judge Taryn A. Merkl, the Affidavit in Opposition filed at ECF No. 54 is deemed to be Defendants' opposition to the Motion. *See* May 23, 2024 Order (accepting the late filing of the Affidavit in Opposition and directing Plaintiff to file any reply by June 6, 2024); *see also* ECF No. 56. Although Defendants filed an additional document after the filing of the Affidavit in Opposition, *see* ECF No. 55, that additional document does not affect the Court's conclusions herein.

In their Local Civil Rule 56.1 Counter-Statements of Material Facts, Defendants (1) respond to Plaintiff's Local Civil Rule 56.1 Statements of Material Facts; and (2) include "Additional

Plaintiff argues that pursuant to the "unambiguous contractual agreement of indemnification" entered into between Plaintiff and Defendants, Plaintiff is entitled to reimbursement from Defendants of the settlement sum paid to Casa Pasiva.  *See* Pl.'s Br. at 9-10. Plaintiff further argues that Defendants' wrongful termination allegation against Casa Pasiva is irrelevant for the determination of the Motion in light of the "unambiguous broad settlement discretion contractually given to [Plaintiff]" by the terms of the indemnification agreement.  *See* Pl.'s Br. at 10.

Defendants argue that Plaintiff "is not entitled to summary judgment based upon its inappropriate conduct in paying out on the indemnity bond to Casa Pasiva HDFC."  *See* Defs.' Opp. at 1.[4]  More specifically, Defendants assert, *inter alia*, that Plaintiff "abused its discretion and authority to make such a settlement at the expense of all the defendants herein without fair warning or notice;" that Plaintiff "settle[d] the indemnity claim with Casa Pasiva under false pretenses by willfully recklessly or negligently failing to ascertain the true facts and conduct a proper due diligence investigation;" that Plaintiff "failed to give fair warning or notice of the alleged payment which would have been vehemently opposed by the defendants herein;" that Plaintiff's actions "not only cost the defendants millions of dollars in profit but created an unreasonable liability;" that "[t]he conduct of the plaintiff is so reckless, that it questions the integrity and muddies the waters of the relationship between representatives from the bonding company and representatives from Casa Pasiva;" and that "under the circumstances, it was

---

Statement of Facts in Opposition."  The Court refers herein to Defendants' responses to Plaintiff's Local Civil Rule 56.1 Statements of Material Facts by paragraph number and to Defendant's Additional Statement of Facts in Opposition by page number.

[4]  When citing to Defendants' opposition, the Court refers to the page numbers generated by the Court's electronic case filing system ("ECF").

imprudent and in bad faith for Plaintiff to settle Casa Pasiva's claims."  *See* Defs.' Opp. at 8; Defs.' Counter 56.1 at 10.

For the reasons set forth below, Plaintiff's Motion for Summary Judgment is granted.

## BACKGROUND

### I.     Relevant Factual Background

Unless otherwise indicated, the following facts are undisputed or described in the light most favorable to Defendants, the non-moving parties.[5]

#### A.     The Construction Contract

On or about June 10, 2019, Casa Pasiva, as owner, and Defendant FG-PH, as general contractor, entered into a contract (the "Construction Contract") in the amount of $21,292,247 for the renovation of "146 occupied Dwelling Units in Brooklyn, New York, distributed over 8 buildings, in two phases" (the "Project").  *See* Defs.' Counter 56.1 at 5.

#### B.     The Performance Bond

Plaintiff issued Performance Bond No. 0221326 (the "Performance Bond") in the amount of $21,292,247 as surety for Defendant FG-PH's contractual obligation to perform the scope of work in conformance with the terms and conditions of the Construction Contract.  *See* Pl.'s 56.1 ¶ 3; Performance Bond, Pl.'s 56.1 Exhibit B.[6]

The Performance Bond, which lists Defendant FG-PH as "Contractor," Plaintiff as

---

[5]  A citation to the parties' Local Civil Rule 56.1 Statements incorporates by reference the documents cited therein.

Although Defendants indicate that certain provisions of the relevant contracts are "[d]isputed," *see* Defs.' Counter 56.1 ¶¶ 6, 9, Defendants do not appear to dispute the existence or text of the contract provisions.  *See generally* Defs.' Counter 56.1.

[6]  Plaintiff's Local Civil Rule 56.1 Statements of Material Facts and its Exhibits were filed together at ECF No. 53-1.  When citing to the Exhibits, the Court refers to the internal page numbers or to the relevant section numbers.

"Surety," and Casa Pasiva as "Owner," provides:

> If there is no Owner Default under the Construction Contract, the Surety's obligation under this Bond shall arise after

> .1     the Owner first provides notice to the Contractor and the Surety that the Owner is considering declaring a Contractor Default. Such notice shall indicate whether the Owner is requesting a conference among the Owner, Contractor and Surety to discuss the Contractor's performance. If the Owner does not request a conference, the Surety may, within five (5) business days after receipt of the Owner's notice, request such a conference. If the Surety timely requests a conference, the Owner shall attend. Unless the Owner agrees otherwise, any conference requested under this Section 3.1 shall be held within ten (10) business days of the Surety's receipt of the Owner's notice. If the Owner, the Contractor and the Surety agree, the Contractor shall be allowed a reasonable time to perform the Construction Contract, but such an agreement shall not waive the Owner's right, if any, subsequently to declare a Contractor Default;

> .2     the Owner declares a Contractor Default, terminates the Construction Contract and notifies the Surety;

>     and

> .3     the Owner has agreed to pay the Balance of the Contract Price in accordance with the terms of the Construction Contract to the Surety or to a contractor selected to perform the Construction Contract.

*See* Performance Bond § 3.

> The Performance Bond also provides:

> When the Owner has satisfied the conditions of Section 3, the Surety shall promptly and at the Surety's expense take one of the following actions:

> . . .

> § 5.4 Waive its right to perform and complete, arrange for completion, or obtain a new contractor and with reasonable promptness under the circumstances:

> .1     After investigation, determine the amount for which it may be liable to the Owner and, as soon as practicable after the amount is determined, make payment to the Owner; or

> .2     Deny liability in whole or in part and notify the Owner, citing the reasons for denial.

*See* Performance Bond § 5.

### C.     The General Agreement of Indemnification

"The pre-condition for [Plaintiff] to issue performance bonds for the benefit of FG-PH, including [the Performance Bond], was for FG-PH to execute the [Berkley General Agreement of Indemnification (the "GAI")] that includes § 1.01 that creates the FG-PH contractual indemnification and hold harmless obligation owed to [Plaintiff] that is at issue in the Action." Pl.'s 56.1 ¶ 1; *see* GAI, Pl.'s 56.1 Exhibit A.

The introductory paragraph of the GAI provides:

> This General Agreement of Indemnity (hereafter the "Agreement") is made and entered into by the Undersigned (individually and collectively hereafter referred to as the "Indemnitors" or "Undersigned"), who hereby agree to bind themselves, jointly and severally, for the benefit of Acadia Insurance Company, Berkley Regional Insurance Company, Berkley Insurance Company, Carolina Casualty Insurance Company, Continental Western Insurance Company, Union Insurance Company, co-sureties and/or reinsurance companies, (hereafter referred to as separately and collectively the "Surety").

*See* GAI at 1.

Section 1.01 of the GAI, which is set forth under the header "Article I - Indemnification and Hold Harmless," provides:

> The Undersigned, jointly and severally, shall exonerate, hold harmless, indemnify, and keep indemnified the Surety from and against any and all liability arising from any cause of action, claim, cost, damage, debt, demand, expenditure, liability, loss, payment, obligation, or penalty of any kind whatsoever, including without limitation, interest costs, court costs, costs to compromise or settle any claim, expert fees, investigative costs and the fees and expenses of attorneys, accountants and other professionals or service providers of any nature whatsoever, whether or not alleged, asserted, awarded, contingent, incurred, potential, threatened, matured or unmatured, and shall reimburse Surety for any payment by it, related to or by reason of: (i) this Agreement, a Contract or Bonds and/or Surety's procuring or enforcement of the same or the prosecution, investigation or defense of any Claim against or by Surety; (ii) any loans, credits, advances or monies guaranteed, lent, advanced or extended by Surety from time to time to or for the account of any Undersigned; (iii) Surety having accepted Collateral as security for the obligations of the Undersigned to Surety or the

enforcement of Surety's interest therein; or (iv) the occurrence of an Event of
Default and any prosecution, investigation, defense or settlement of the same by
Surety; or (v) any action or inaction by Surety or liability incurred or sustained by
Surety in reliance upon representations or statements made by Indemnitors or
their attorneys and representatives regarding defenses available to an Indemnitor
and/or Surety to claims made against such Bonds (all of the foregoing referred to
singly as an "Indemnified Claim" or an "Indemnified Expense" and collectively
as an "Indemnified Claim or Expense").  The Undersigned shall also pay to the
Surety interest on all such payments, from the date thereof, at the maximum legal
post-judgment rate permitted by New York law, compounded daily.

*See* GAI § 1.01.

The obligation pursuant to Section 1.01 of the GAI is "enhanced" by Defendants Arista

Mechanical HVAC, Inc., CEGF&G Plumbing Corp., 1815 Linden, LLC, Efstratios Georgelis,

Michael Panagiotopulos, Polyxeni Panagiotopoulos, Carlos Cassius, and Carmen Cassius

("Indemnitors") individually executing the GAI making them jointly and severally liable for the

contractual indemnification and hold harmless obligation of Defendant FG-PH created by GAI

Section 1.01.  *See* Pl.'s 56.1 ¶ 2; *see also* GAI at 8-12 & Rider.

Section 2.01 of the GAI, titled "Claim Settlement," provides:

The Surety shall have the exclusive right in its name and/or the name of any
Indemnitor to decide and determine whether any Indemnified Claim, or any
claim, off-set or other right of an Indemnitor on a bonded Contract or Contract in
which the Surety has an interest, shall or shall not be paid, compromised, settled,
resisted, defended, prosecuted, tried or appealed, and the Surety's decision
thereon, absent fraud, shall be final, conclusive and binding upon the Indemnitors.
An itemized statement of payments made by the Surety for any of the purposes
specified herein, sworn to by an officer of the Surety or the copies of the checks
or drafts for such payments, shall be prima facie evidence of the liability of the
Indemnitors to reimburse the Surety such amounts with interest from the date of
payment.

*See* GAI § 2.01.

Section 4.01 of the GAI, titled "Default," provides in relevant part: "'Event of Default'

shall mean: . . . (xii) a declaration of default by an Obligee under any Contract or Bonds . . . ."

*See* GAI § 4.01.

### D.     Project Delays

In their "Additional Statement of Facts in Opposition," Defendants assert, *inter alia*, the following: that Defendant FG-PH incurred delays at the Project that were beyond Defendant FG-PH's control; that beginning in or around March 2020, the worldwide Covid-19 pandemic "exploded, causing havoc to the New York City (and worldwide) construction industry;" that as a result of multiple executive orders issued by then-New York Governor Andrew Cuomo, as well as then-New York City Mayor Bill de Blasio along with rules passed by various governmental authorities, construction was completely halted for an extended period, from March 2020 until June of 2020; that even prior to the onset of the Covid-19 pandemic, Defendant FG-PH experienced Project delays that were excusable pursuant to Defendant FG-PH's contract with Casa Pasiva; that Casa Pasiva failed to select materials and finish colors prior to the commencement date of the Project, causing delays from the outset; that Casa Pasiva refused to permit Defendant FG-PH the access required to keep the Project on schedule and on budget; that some tenants of the buildings simply refused to provide Defendant FG-PH with any access to their apartments, preventing Defendant FG-PH from performing Project work; that Casa Pasiva also insisted on ordering several materials, such as windows, flooring, and tiles that needed to be imported or were otherwise "special order," taking additional time to be delivered, even though Defendant FG-PH suggested readily available alternatives to Casa Pasiva that would not further delay the Project for many such materials; that by April 2, 2020, the Project had only reached 29.72% completion; that this was largely due to Casa Pasiva's failures to approve Project materials and because it insisted on ordering long-lead time materials that were not readily available; that Casa Pasiva had increased the Project scope of work; that when construction resumed after being halted by Covid-related orders and rules, Defendant FG-PH was only

permitted to allow one employee per 250 square feet of living space to perform construction work at any given time; that "New York State's June 26, 2020 'Interim Guidance for Construction Activities During the Covid-19 Public Health Emergency' dictated that, 'For any work occurring indoors (e.g. construction within an existing building), no more than 1 worker per 250 square feet is allowed on site, excluding supervisors, unless additional personal protective measures are implemented . . . ;'" that this meant that at the Project, which largely focused on renovating occupied, residential apartments, Defendant FG-PH could generally only utilize a single worker per occupied apartment to carry out the work of the Construction Contract; that "Covid-19 completely changed the nature of the Project, which became a relocation project, as opposed to a tenant-in placed project – where only one or a maximum of two workers could work in any single apartment;" that a decision was made by Casa Pasiva not to continue with the second phase of the Project and for Defendant FG-PH to concentrate solely on the first phase; that all drawings for the Project still were not approved by the New York City Department of Buildings; that this was a responsibility of the architect in conjunction with Casa Pasiva; and that Defendant FG-PH did all that it could to make up the Project schedule but Casa Pasiva could only make four units available for renovation at a time for interior work, every four weeks.  *See* Defs.' Counter 56.1 at 6-9.

     **E.**    **Termination of the Construction Contract**

     In their "Additional Statement of Facts in Opposition," Defendants further assert, *inter alia*, the following: that in or around February 2021, Casa Pasiva requested a meeting with Defendant FG-PH and Plaintiff; that during that meeting, "we all agreed on continuing the Project in conjunction with a management company proposed by Plaintiff, and continuing to use all current Project subcontractors, since they already knew the details of the Project;" that "[a]

month later and without any warning FG-PH received a letter of default from Casa Pasiva,

seemingly in collusion with Plaintiff;" that at the time of the default notice, the Project was

51.16% complete; and that "there was enough money remaining on the Project contract balance

to complete the Project – further evidence of apparent collusion."  *See* Defs.' Counter 56.1 at 9-

10; *see also* Defs.' Opp. at 7 (asserting that "[t]he default was premature").

Casa Pasiva terminated the Construction Contract and asserted a claim (the "Claim").

Plaintiff and Defendants disagree as to whether the termination was for cause.  Plaintiff asserts

that "Casa Pasiva terminated the Contract for cause on April 16, 2021 . . . and asserted the Claim

based thereon."  *See* Pl.'s 56.1 ¶ 5.  Defendants dispute this assertion and assert that "while Casa

Pasiva purported to terminate the Contract for Cause, FG-PH Corp. has valid defenses,

justifications and explanations as to why such termination was improper."  *See* Defs.' Counter

56.1 ¶ 5.  Plaintiff and Defendants also disagree as to whether the termination constituted an

"Event of Default" under the GAI.  Plaintiff asserts that Section 4.01(xii) of the GAI "establishes

that the Termination constitutes an 'Event of Default' of the GAI creating an 'Indemnified

Claim' pursuant to GAI § 1.01(iv) . . . ."  *See* Pl.'s 56.1 ¶ 6.  Defendants dispute this assertion

and assert that "while Casa Pasiva purported to terminate the Contract for Cause, FG-PH Corp.

has valid defenses, justifications and explanations as to why such termination was

improper.  Thus, no 'Event of Default' occurred."  *See* Defs.' Counter 56.1 ¶ 6.

### F.    Settlement of the Claim

On July 9, 2021, Plaintiff and Casa Pasiva executed an Unconditional General Release

(the "Release").  *See* Pl.'s 56.1 ¶ 10; *see also* Release, Pl.'s 56.1 Exhibit D.  Pursuant to the

Release, Plaintiff and Casa Pasiva agreed that the Claim would be settled by Plaintiff paying

$10,500,000 (the "Settlement Sum") to Casa Pasiva.  *See* Pl.'s 56.1 ¶ 10; *see also* Release.

Defendants do not appear to dispute this but state that Defendant FG-PH "denies the *validity* of the Claim and its amount." *See* Defs.' Counter 56.1 ¶ 10 (emphasis added).

On September 8, 2021, Plaintiff paid the Settlement Sum. *See* Pl.'s 56.1 ¶ 11; *see also* Pl.'s 56.1 Exhibit E (consisting of payment request form and email with voucher confirming September 8, 2021 payment of $10,500,000).

## II.    Procedural Background

On April 12, 2022, Plaintiff filed the Complaint. *See* ECF No. 1. On May 26, 2022, Defendants filed an Answer with Affirmative Defenses. *See* ECF No. 16.

On May 4, 2023, the parties certified the close of fact discovery. *See* May 4, 2023 Order. Also on May 4, 2023, Plaintiff filed a motion for a pre-motion conference in anticipation of filing a motion for summary judgment. *See* ECF No. 26. On May 18, 2023, Defendants filed a response in opposition to the motion for a pre-motion conference. *See* ECF No. 29. The motion for a pre-motion conference thereafter was held in abeyance pending the filing of a joint status report. *See* June 13, 2023 Order. Following the grant of a joint motion to adjourn, the Court held a pre-motion conference on August 31, 2023. *See* August 31, 2023 Minute Entry; June 28, 2023 Order.

On April 22, 2024, Plaintiff filed its Motion for Summary Judgment, ECF No. 53, which Defendants oppose, *see* ECF No. 54.

## STANDARD OF REVIEW

Rule 56(a) of the Federal Rules of Civil Procedure provides that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict

for the nonmoving party.'" *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 113-14 (2d Cir. 2017) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

"A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the [summary judgment] motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

The moving party bears the initial burden of establishing the absence of any genuine issue of material fact. *See Liberty Lobby, Inc.*, 477 U.S. at 256; *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008). If the moving party meets its initial burden, "the burden shifts to the nonmovant to point to record evidence creating a genuine issue of material fact." *See Brandon v. Royce*, 102 F.4th 47, 54-55 (2d Cir. 2024). The nonmoving party must "go beyond the pleadings" and "designate specific facts showing that there is a genuine issue for trial," *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quotation omitted), by offering "concrete evidence from which a reasonable juror could return a verdict in his favor," *Dister v. Cont'l Grp.*, 859 F.2d 1108, 1114 (2d Cir. 1988) (quoting *Liberty Lobby, Inc.*, 477 U.S. at 256). The party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Bald assertions, completely unsupported by evidence, do not satisfy the opposing party's burden. *See Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991). And "speculation alone is insufficient to defeat a motion for summary judgment." *McPherson v.*

*N.Y.C. Dep't of Educ.*, 457 F.3d 211, 215 n.4 (2d Cir. 2006); *see also Shannon v. N.Y. City Transit Auth.*, 332 F.3d 95, 99 (2d Cir. 2003) (noting that "[c]onclusory allegations, conjecture, and speculation . . . are insufficient to create a genuine issue of fact").

Rule 56 "does not impose an obligation on a district court to perform an independent review of the record to find proof of a factual dispute." *Amnesty Am. v. Town of W. Hartford*, 288 F.3d 467, 470 (2d Cir. 2002). "While the trial court has discretion to conduct an assiduous review of the record in an effort to weigh the propriety of granting a summary judgment motion, it is not required to consider what the parties fail to point out." *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 292 (2d Cir. 2000) (quotation omitted).

In deciding a motion for summary judgment, a district court properly considers only evidence that would be admissible at trial. *See Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 164 F.3d 736, 746 (2d Cir. 1998). "In determining whether summary judgment is appropriate, [a district court] must resolve all ambiguities and draw all reasonable inferences against the moving party." *Tolbert v. Smith*, 790 F.3d 427, 434 (2d Cir. 2015) (citing *Matsushita Elec. Indus. Co.*, 475 U.S. at 587). A district court "is duty bound not to weigh evidence or assess the credibility of witnesses." *Smith v. DeGirolamo*, No. 17-CV-05532, 2020 WL 5752226, at *3 (E.D.N.Y. Sept. 25, 2020) (citing *United States v. Rem*, 38 F.3d 634, 644 (2d Cir. 1994)).

## DISCUSSION

For the reasons set forth below, Plaintiff is entitled to summary judgment on its claim for contractual indemnification as against all Defendants and is entitled to damages in the amount of $10,500,000 plus prejudgment interest, accruing at a rate of 9% per annum, compounded daily, from September 8, 2021 to the date of entry of judgment.

I.    **Contractual Indemnification**

For the reasons set forth below, Plaintiff is entitled to summary judgment on its claim for contractual indemnification as against all Defendants.

A.    **Applicable Law**[7]

As the United States Court of Appeals for the Second Circuit has stated, "[i]t is axiomatic under New York law . . . that the fundamental objective of contract interpretation is to give effect to the expressed intentions of the parties." *See Lockheed Martin Corp. v. Retail Holdings, N.V.*, 639 F.3d 63, 69 (2d Cir. 2011) (alteration accepted) (quotation omitted). Further, "[i]n a dispute over the meaning of a contract, the threshold question is whether the contract is ambiguous." *Id*. "Ambiguity is determined by looking within the four corners of the document, not to outside sources." *Id.* (quotation omitted). "When an agreement is unambiguous on its face, it must be enforced according to the plain meaning of its terms." *Id*. "It is well settled that a contract is unambiguous if the language it uses has a definite and precise meaning, as to which there is no reasonable basis for a difference of opinion." *Id*. "Conversely, as [the Second Circuit has] held, the language of a contract is ambiguous if it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement." *Id.*; *see also Topps Co. v. Cadbury Stani S.A.I.C.*, 526 F.3d 63, 68 (in the context of a contract dispute, stating that "[a]mbiguity . . . is defined in terms of whether a reasonably intelligent person viewing the contract objectively could interpret the language in more than one way"). A motion for summary judgment may be granted in a contract dispute

---

7    The parties do not appear to dispute that New York law governs here. *See* GAI § 20.03 (providing: "This Agreement its construction, validity, performance and all rights, obligations and liabilities arising hereunder shall be governed, construed and enforced in accordance with the laws of the State of New York, exclusive of conflicts of law principles. This Agreement shall be liberally construed so as to protect, exonerate and indemnify the Surety.").

"when the contractual language on which the moving party's case rests is found to be wholly unambiguous and to convey a definite meaning." *See Topps*, 526 F.3d at 68; *see also Fischer & Mandell, LLP v. Citibank, N.A.*, 632 F.3d 793, 799 (2d Cir. 2011) (in the context of a breach of contract claim, stating that "[s]ummary judgment is appropriate if the terms of the contract are unambiguous").

As courts have recognized, indemnification agreements executed in consideration of a surety bond "are valid and enforceable under New York law." *See Gen. Acc. Ins. Co. of Am. v. Merritt-Meridian Constr. Corp.*, 975 F. Supp. 511, 515-16 (S.D.N.Y. 1997) (citing *Int'l Fid. Ins. Co. v. Spadafina*, 596 N.Y.S.2d 453, 454 (2d Dep't 1993)). "Where . . . [a] general contractor has expressly agreed to indemnify the surety for losses arising from claims made on surety bonds, the indemnity agreement governs the relationship between the surety and the contractor." *Id.* at 516 (collecting cases); *see also Star Ins. Co. v. A&J Constr. of N.Y., Inc.*, No. 15-CV-08798, 2017 WL 6568061, at *5 (S.D.N.Y. Dec. 22, 2017). A plaintiff "states a prima facie case under [such a] contract by submitting proper documentation of payment of a settlement as well as the fees and costs incurred in making a settlement." *See Star Ins. Co.*, 2017 WL 6568061, at *5 (alterations accepted) (quoting *Int'l Fid. Ins. Co.*, 596 N.Y.S.2d at 454-55); *Liberty Mut. Ins. Co. v. Biltmore Gen. Contractors, Inc.*, No. 21-CV-05130, 2023 WL 5350813, at *4 (E.D.N.Y. Aug. 21, 2023) (noting that "a surety's expenditure of funds on matters related to the underlying bonds is entitled to a 'presumption of propriety,' such that on a surety's summary judgment motion it is the indemnitors' burden to produce evidence showing 'bad faith or unreasonableness of the amount paid'" (first quoting *Frontier Ins. Co. v. Renewal Arts Contracting Corp.*, 784 N.Y.S.2d 698, 700 (3d Dep't 2004); then quoting *Travelers Indem. Co. v. Harrison Constr. Grp. Corp.*, No. 06-CV-04011, 2008 WL 4725970, at *4 (E.D.N.Y. Oct. 22, 2008))).

"Once a plaintiff meets its burden by establishing a prima facie case, in order to avoid summary judgment, a defendant must demonstrate the surety payments were in bad faith or for an unreasonable amount." *Berkley Reg'l Ins. Co. v. Weir Bros., Inc.*, No. 13-CV-03227, 2013 WL 6020785, at *8 (S.D.N.Y. Nov. 6, 2013); *see also Liberty Mut. Ins. Co.*, 2023 WL 5350813, at *4 (citing *Frontier Ins. Co.*, 784 N.Y.S.2d at 700 and *First Nat'l. Ins. Co. of Am. v. Joseph R. Wunderlich, Inc.*, 144 F. App'x 125, 127 (2d Cir. 2005)). New York courts have equated bad faith with fraud or collusion. *See Liberty Mut. Ins. Co.*, 2023 WL 5350813, at *4 (collecting cases); *Safeco Ins. Co. of Am. v. M.E.S., Inc.*, No. 09-CV-03312, 2017 WL 1194730, at *12 (E.D.N.Y. Mar. 30, 2017), *aff'd sub nom. M.E.S., Inc. v. Safeco Ins. Co. of Am.*, 910 F.3d 705 (2d Cir. 2018). A defendant has to "create a triable issue of fact with the respect to the propriety of [a plaintiff's] surety payments" and "conclusory allegations are insufficient to overcome [a plaintiff's] proof of valid surety payments, and to avoid summary judgment." *See Berkley*, 2013 WL 6020785, at *8 (alteration accepted) (quotations omitted); *see also Liberty Mut. Ins. Co.*, 2023 WL 5350813, at *4; *Gen. Acc. Ins. Co. of Am.*, 975 F. Supp. at 518.

Courts have noted that a surety's exercise of its contractual rights is not evidence of bad faith and that a surety's decision to proceed with claims despite possible defenses also is not evidence of bad faith. *See, e.g., Gen. Acc. Ins. Co. of Am.*, 975 F. Supp. at 518-19. And courts have recognized that "[i]t is irrelevant whether [defendants] . . . actually defaulted on their contracts with the owners, so long as [plaintiff] acted in good faith in making the payments and completing the performance under the construction contracts." *See id.* at 516; *see also Int'l Fid. Ins. Co.*, 596 N.Y.S.2d at 454.

### B.    Plaintiff Is Entitled to Summary Judgment

The relevant contractual provisions here are unambiguous, Plaintiff has established a

prima facie case, and Defendants have not cited to – nor does the record contain – evidence from which a reasonable jury could find that Plaintiff acted in bad faith or settled the Claim for an unreasonable amount.

### 1.    Prima Facie Case

Here, the relevant terms of the Performance Bond and the GAI are unambiguous.  The relevant terms are not "capable of more than one meaning when viewed objectively by a reasonably intelligent person."  *See Lockheed Martin Corp.*, 639 F.3d at 69.  Indeed, Defendants do not appear to argue that the relevant terms are ambiguous.

Pursuant to the unambiguous terms of Section 3 of the Performance Bond, Plaintiff's obligation under the Performance Bond was triggered by certain actions taken by Casa Pasiva, including declaring a "Contractor Default," terminating the Construction Contract, and notifying Plaintiff.  *See* Performance Bond § 3; *see also* April 15, 2021 Letter, ECF No. 58-8; Pl.'s 56.1 Exhibit C.[8]  Thereafter, pursuant to the unambiguous terms of Section 5 of the Performance Bond, Plaintiff exercised its option to make payment to Casa Pasiva to settle the Claim.  *See* Performance Bond § 5.4.1.

Pursuant to the unambiguous terms of the GAI, Plaintiff had the "exclusive right" to "decide and determine" whether the Claim should be paid and Plaintiff's decision, "absent fraud," was to be final.  *See* GAI §§ 2.01, 4.01(xii).  Plaintiff settled the Claim and submitted proof of payment.  *See* Pl.'s 56.1 ¶ 11; Pl.'s 56.1 Exhibit E.

---

[8]    Defendants do not appear to dispute that Casa Pasiva declared a Contractor Default or terminated the Construction Contract – rather, Defendants assert that termination was improper and thus no Event of Default occurred.  *See* Defs.' Counter 56.1 ¶¶ 5, 6, 9; *see also* Pl.'s 56.1 Exhibit C.  However, whether termination was proper or not and/or whether Defendant FG-PH might have a claim against Casa Pasiva or not, *see* Defs.' Counter 56.1 at 10, does not affect Plaintiff's obligation under the unambiguous terms of the Performance Bond.  *See generally* Performance Bond.

Plaintiff has established a prima facie case for contractual indemnification.

## 2.    Bad Faith/Unreasonable Settlement Amount

Here, the record evidence, viewed in the light most favorable to Defendants, does not establish that Plaintiff acted in bad faith or settled the Claim for an unreasonable amount or that there is a genuine dispute as to any material fact with respect to these issues.

In opposing the Motion, Defendants' conclusorily assert, *inter alia*, that Plaintiff "abused its discretion and authority to make such a settlement at the expense of all the defendants herein without fair warning or notice;" that Plaintiff "settle[d] the indemnity claim with Casa Pasiva under false pretenses by willfully recklessly or negligently failing to ascertain the true facts and conduct a proper due diligence investigation;" that Plaintiff "failed to give fair warning or notice of the alleged payment which would have been vehemently opposed by the defendants herein;" that "[t]he conduct of the plaintiff is so reckless, that it questions the integrity and muddies the waters of the relationship between representatives from the bonding company and representatives from Casa Pasiva;" that both Defendant FG-PH and Plaintiff "had valid defenses to the claims of Casa Pasiva and Plaintiff never should have compromised such claims;" that Defendant FG-PH "had other valid defenses to Casa Pasiva's claims, including Casa Pasiva's breaches of its contract with FG-PH which Plaintiff failed to raise;" and that "under the circumstances, it was imprudent and in bad faith for Plaintiff to settle Casa Pasiva's claims." *See* Defs.' Opp. at 8; Defs.' Counter 56.1 at 10. Defendants do not, however, cite to – nor does the record contain – *evidence* of bad faith – *i.e.*, of fraud or collusion. Similarly, Defendants do not cite to – nor does the record contain – *evidence* that Plaintiff settled the Claim for an unreasonable amount. *See* Defs.' Counter 56.1. Defendants only conclusorily assert that Plaintiff's actions "not only cost the defendants millions of dollars in profit but created an

18

unreasonable liability." *See* Defs.' Opp. at 8.

Defendants' conclusory assertions are insufficient to defeat the Motion. *See Berkley*, 2013 WL 6020785, at *8; *Liberty Mut. Ins. Co.*, 2023 WL 5350813, at *4; *Gen. Acc. Ins. Co. of Am.*, 975 F. Supp. at 518.

Defendants argue that they "should be permitted to take the deposition of the bonding company representatives who were at the project and [k]new or should have known how much it would have taken to complete the project as well as the time line for completion" and conclusorily assert that "[t]hese representatives would have firsthand knowledge just like our representatives and subcontractors and would support the fact that the bonding company acted not only inappropriately but suspiciously." *See* Defs.' Opp. at 9. Defendants are not entitled to conduct additional discovery at this late stage. As set forth above, the parties certified the close of fact discovery on May 4, 2023 and as Plaintiff correctly notes, "Defendants have already been afforded the time and opportunity to obtain any evidentiary proof that could support allegations of collusion and bad faith," *see* Pl.'s Reply at 5. And, in any event, Defendants fail to persuasively argue that testimony about "how much it would have taken to complete the project as well as the time line for completion" would demonstrate bad faith by Plaintiff in settling the Claim or that the settlement amount was unreasonable.

Plaintiff is entitled to summary judgment on its contractual indemnification claim.[9]

---

[9] Although Defendants asserted various affirmative defenses with their Answer, *see* ECF No. 16 ¶¶ 35-44, they do not discuss the affirmative defenses in their opposition to the Motion, *see generally* Defs.' Opp. – let alone point to record evidence establishing the affirmative defenses. The Court deems Defendants to have abandoned the affirmative defenses, which, in any event, are unavailing on the record before the Court.

The Court notes that although the filing at ECF No. 55 (which is not the filing accepted and deemed to be Defendants' opposition to the Motion) mentions, without elaboration, certain

## II.      Damages

As the Second Circuit has noted, "courts . . .  routinely award damages that are readily calculable based on the undisputed facts on summary judgment."  *See AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 740 (2d Cir. 2010); *see also Hart v. Rick's Cabaret Int'l, Inc.*, 60 F. Supp. 3d 447, 474 (S.D.N.Y. 2014) (noting that "[d]istrict courts may grant summary judgment as to damages for which there exist no disputed issues of material fact"); *GCCFC 2006-GG7 Westheimer Mall, LLC v. Okun*, No. 07-CV-10394, 2008 WL 3891257, at *3 (S.D.N.Y. Aug. 21, 2008) (noting that "[s]ummary judgment may be granted on damages where there is no fact dispute as to the amount of damages").  Here, damages are readily calculable based on the undisputed facts.

As set forth above, Plaintiff paid $10,500,000 to Casa Pasiva on September 8, 2021 to settle the Claim.  The GAI unambiguously requires Defendants "jointly and severally" to "reimburse" Plaintiff for this payment and to pay to Plaintiff "interest on [the] payment[], from the date thereof, at the maximum legal post-judgment rate permitted by New York law, compounded daily."  *See* GAI § 1.01.  That rate is 9% per annum.  *See* N.Y. C.P.L.R. § 5004; *see also* N.Y. C.P.L.R. § 5001(a), (b).

Accordingly, Plaintiff is awarded damages in the amount of $10,500,000 plus prejudgment interest, accruing at a rate of 9% per annum, compounded daily, from September 8, 2021 to the date of entry of judgment and Defendants are jointly and severally liable for the damages awarded.[10]

---

affirmative defenses, that filing does not establish any affirmative defense – or even cite to any record evidence.  *See generally* ECF No. 55.

[10]  Plaintiff seeks damages calculated with interest "up to and including the date of the award of Summary Judgment."  *See* Pl.'s Br. at 10.

**CONCLUSION**

For the reasons set forth above, (1) Plaintiff's Motion for Summary Judgment, ECF No. 53, is GRANTED; (2) Plaintiff is awarded damages in the amount of $10,500,000 plus prejudgment interest, accruing at a rate of 9% per annum, compounded daily, from September 8, 2021 to the date of entry of judgment; and (3) Defendants FG-PH Corp., Arista Mechanical HVAC, Inc., CEGF&G Plumbing Corp., 1815 Linden, LLC, Efstratios Georgelis, Michael Panagiotopoulos, Polyxeni Panagiotopoulos, Carlos Cassius, and Carmen Cassius are jointly and severally liable for the damages awarded.

The Clerk of Court is directed to enter judgment accordingly and close the case.

SO ORDERED.

_/s/ Diane Gujarati_____
DIANE GUJARATI
United States District Judge

Dated: March 26, 2025
       Brooklyn, New York